Diana Shapiro and Martin Maseik, Appellees, v.
Amalgamated Trust and Savings Bank, Appellant.

Gen. No. 38,511.

244

Opinion filed December 31, 1935.

FISHER, BOYDEN, BELL, BOYD & MARSHALL, of Chicago, for appellant; RUDOLPH M. MULFINGER, of Chicago, of counsel.

ABRAHAM KOSDON and WILLIAM C. WINES, both of Chicago, for appellees; GREEN & COSTIGAN and WALTER C. BOWMAN, all of Chicago, of counsel.

MR. PRESIDING JUSTICE McSURELY delivered the opinion of the court.

Plaintiffs brought suit alleging that defendant failed to follow instructions of plaintiffs with reference to procuring a fire insurance policy and by reason of this failure plaintiffs were unable to collect the insurance when fire nearly destroyed the premises. Upon trial plaintiffs had a verdict for $1,783.75; defendant appeals from the judgment on the verdict.

Plaintiff Diana Shapiro is of foreign birth; she had done business with defendant bank for many years; she had received a letter with reference to an insurance policy on some farm buildings in New York and called upon defendant bank to have the letter explained to her; she was referred to a young lady employed in the bank who told her the letter was a notice that within five days after its date the insurance policy would be canceled; Miss Shapiro asked what she should do and was told that defendant would secure a policy for her; Miss Shapiro gave information as to the value of the property and it was suggested to her that she take out a policy for $3,000; she was then told to bring in her deed to the property; some time later she went to the bank, gave the deed to the young lady and at the same

time informed her that a "partner" occupied the premises and that there was also a mortgage and another insurance policy on the premises; she was told that defendant knew how to make out a policy from the deed; the deed was left with the defendant's employee and plaintiff paid defendant the insurance premium; the latter part of March or the first of April the policy was delivered by the defendant to Miss Shapiro; shortly thereafter there was a fire upon the premises and plaintiffs made proofs of loss to the Merchants and Manufacturers Fire Insurance Company, which issued the policy, but these were returned to her by the insurance company with a denial of liability.

The deed which Miss Shapiro left with defendant for the purpose of giving it the data necessary for the policy ran to Martin Maseik and Diana Shapiro, the plaintiffs; it conveyed by metes and bounds 125 acres of land, more or less, in Ulster County, New York; the policy of the Merchants and Manufacturers Fire Insurance Company which defendant secured for plaintiffs and delivered to Miss Shapiro named Diana Shapiro alone as the insured and contained also a provision that the entire policy should be void "if the interest of the insured be other than unconditional and sole ownership."

The documents evidencing proofs of loss and the letter of the insurance company denying liability, although apparently introduced in evidence and considered by the jury, have, according to a stipulation, been lost in the office of the superior court clerk. It is therefore a fair presumption that the insurance company based its denial of liability upon the showing in the proofs of loss that Martin Maseik also had an interest in the property and therefore under the condition in the policy as to sole ownership the policy was void. The jury could properly find that defendant failed to follow the instructions given it by Diana Shapiro to

procure a valid policy of fire insurance upon the premises.

Defendant argues that Miss Shapiro was under a duty to examine the policy issued to her within a reasonable time and that she will be presumed to know the condition in the policy voiding the same if her ownership was not sole and unconditional. *Brant v. Gallup,* 111 Ill. 487, is cited in support of the general proposition that the insured is under a duty to examine a policy in order to inform himself of its terms. The decisive point in that case was that the insured knew that his agents had taken out insurance for a less amount than he had ordered, and by his conduct had ratified this action. Cases involving the liability of an insurance company which directly issues a policy to the insured are not in point. This is a case where plaintiffs are asking damages from their agent who failed to follow their instructions. The facts are very similar to those involved in *Reed Mfg. Co. v. Wurts,* 187 Ill. App. 378. In that case plaintiffs instructed the defendant to secure certain fire insurance; defendant failed to follow instructions, with an ensuing loss to plaintiffs who sued defendant to recover damages. The court said:

"The principles of law generally applicable to actions of the character here involved are not seriously controverted by the defendant.

"If an agent neglects to procure insurance or does not follow instructions when obligated so to do, or if the policy obtained is void or materially defective through the agent's fault, or if the principal suffers damage by reason of any mistake or act of omission or commission of the agent which constitutes a breach of duty to his principal, he is liable to his principal for any loss he may have sustained thereby. 1 Joyce on Insurance, sec. 678; Kerr on Insurance, sec. 120; 1 Cooley's Briefs on the Law of Insurance, p. 338."

In *Israelson v. Williams,* 151 N. Y. S. 679, the difference between the rule applicable in an action between the insured and an insurer and an action brought by an insured against his own agent is stated. To the same effect is *Harris v. A. P. Nichols Inv. Co.* (Mo. App.), 25 S. W. (2d) 484. In the instant case the defendant was the agent of the plaintiffs in procuring the insurance policy and it cannot avoid liability because of an alleged failure on the part of plaintiffs to ascertain whether the agent has faithfully performed the duty for which it was employed.

Defendant further contends that there was a failure of proof that plaintiffs had a joint interest in the premises in question, which avoided the policy. Plaintiff Diana Shapiro testified that she and Martin Maseik supplied the purchase price of the property; she also told in some detail as to the joint purchase by herself and Maseik of plumbing, glass, shingles and other lumber that went into the houses, which consisted of a 10-room frame house and two bungalows; she also testified that Maseik was in possession of the premises; there was also introduced in evidence the deed conveying the premises to the plaintiffs, jointly. When it was sought to introduce the deed in evidence the defendant objected because the proof did not follow sec. 20, ch. 30, Conveyance Act, Ill. State Bar Stats. 1935, which provides that where acknowledgment is made before a notary public, where the lands are without the State of Illinois, the acknowledgment must be certified under his seal of office, and the deed offered, while purporting to be acknowledged before a notary public, does not show a notarial seal. It should be borne in mind that it was not necessary to prove precisely what interest either of the respective plaintiffs had in the premises. It was necessary only to show that the ownership of Diana Shapiro was not "unconditional and sole." The evidence that plaintiffs jointly purchased the property

and paid for the improvements and repairs and were jointly in possession under a claim of ownership is *prima facie* evidence of joint ownership. *Glos v. Ault,* 221 Ill. 562; *Hewes v. Glos,* 170 Ill. 436. In Wigmore on Evidence (2d ed.), sec. 2515, the author says that the fact of possession alone may serve to create a presumption of title. The evidence of the joint purchase of the premises and the joint purchase of materials for construction and repairs, and the joint possession, raises a sufficient presumption that Diana Shapiro did not have ''unconditional and sole ownership.''

Objection is made to an instruction given at the request of plaintiffs which contains the objectionable words that any preponderance of evidence, ''however slight,'' sustains the burden of proof imposed upon plaintiff. The use of the words ''however slight'' has been repeatedly criticized, and in a close case might require a reversal. In the instant case, however, there is no substantial controversy as to the facts, hence the questioned instruction is not of sufficient importance to demand a reversal.

Something is said in the argument as to the value of the premises, and there was some evidence as to this. The point is not made in defendant's points. There was evidence that the purchase price and amounts expended for improvements was between $5,000 and $6,000; there was evidence of another policy of insurance on the premises on which the mortgagee received $2,716.25. The present policy is for $3,300. The verdict of $1,783.75 is well within the range of the testimony.

We see no sufficient reason to reverse, and the judgment is therefore affirmed.

*Affirmed.*

Matchett and O'Connor, JJ., concur.